# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

ARMBRUST INTERNATIONAL, LTD.,

Plaintiff,

v.

ABN AMRO BANK N.V.,

Defendant.

C.A. No. CA 08 143

## COMPLAINT

Plaintiff, by its undersigned attorneys, brings this complaint for declaratory judgment against Defendant ABN AMRO Bank N.V. and, as cause for complaint, alleges as follows:

## Parties

1. Armbrust International, Ltd. ("Armbrust") is a corporation organized and existing under the laws of the State of Rhode Island with its principal place of business in Providence, Rhode Island. Armbrust is in the business of manufacturing and distributing precious metal and fashion jewelry chain and other jewelry products.

2. ABN AMRO Bank N.V. (the "Bank") is a bank organized under the laws of The Netherlands with its principal place of business located at Gustav Mahlerlan 10, Amsterdam, The Netherlands. The Bank's principal place of business in the United States is its New York branch, with offices at 500 Park Avenue, New York, New York 10022. The Bank is a foreign bank as defined in § 3101(7) of the International Banking Act, 12 U.S.C. § 3101(7), including its New York branch.

## Nature of Action and Jurisdiction

3. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2210. Jurisdiction is founded upon 28 U.S.C. § 1332(2) since it is a civil action between a citizen of the State of Rhode Island and a citizen or subject of a foreign state. The matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

## Facts Giving Rise to the Claims

4. On or about June 30, 2000, Armbrust and the Bank became parties to a commercial loan transaction including, inter alia, a secured revolving credit facility and secured term loan facility. In addition to the commercial loans, Armbrust requested the Bank to deliver precious metals on consignment for sale to Armbrust and the Bank was willing to make such deliveries and sales on the terms and conditions under that certain Consignment Agreement dated as of June 30, 2000. A true and accurate copy of the Consignment Agreement ("Agreement") is attached hereto and marked as Exhibit A. The Agreement was subsequently amended by a series of letter amendments which are attached hereto and marked collectively as Exhibit B.

5. Section 11(d) of the Agreement permitted the Bank "to conduct at [Armbrust's] expense an annual audit of the Consigned Precious Metal in the possession and control of [Armbrust], such audits to consist of one physical verification of all of [Armbrust's] inventory including an audit review of [Armbrust's] control system and physical verifications of all on premises gold and silver . . . ."

6. The Bank availed itself of the opportunity to conduct annual audits and it retained the firm of Bourget & Associates, Inc. to conduct such audits. By way of example, Bourget conducted a field examination at Armbrust on May 11, May 12 and May 13, 2004 to determine the adequacy of the collateral pledged to the Bank and to review Armbrust's internal accounting, accounts receivable, cash, precious metal accounting, precious metal inventory, production and

security controls. Bourget billed Armbrust, and Armbrust paid on the Bank's behalf, the sum of $4,260.25 for such audit.

7. On May 15, May 16 and May 17, 2005, Bourget conducted a similar field examination at Armbrust which audited, among other things, Armbrust's precious metal accounting and precious metal inventory.

8. Section 11(e) of the Agreement required Armbrust to furnish the Bank each year with audited financial statements prepared by Syner, Cavallaro & Co., independent public accountants, which showed Armbrust's financial condition at the close of each fiscal year. These annual audits also included Armbrust's inventory of consigned precious metal and Armbrust's books and records and other parts of Armbrust's precious metal control systems. Each year, as part of the annual audit, the CPA firm would make specific requests to the Bank to confirm the amounts of outstanding and consigned precious metals. Each year, the Bank would respond to the auditor's request with confirmatory information. Examples of the Bank's responses to the CPA's confirmation requests, dated August, 2004 and August, 2005, are attached collectively as Exhibit C.

9. In late 2005, as a result of Armbrust's dissatisfaction with the service level from the Bank, Armbrust decided to and did negotiate new loan agreements, including a precious metals consignment agreement, with Sovereign Bank. Armbrust informed the Bank that it intended to repay its obligations to the Bank under the Agreement and other loan agreements dated June 30, 2000.

10. On or about December 1, 2005, a Pay-Off Letter was prepared by the Bank and exchanged between Armbrust and the Bank. A true and accurate copy of the Pay-Off Letter, executed by both the Bank and Armbrust, is attached hereto and marked as Exhibit D.

11. The Pay-Off Letter informed Armbrust that its purchase price obligations in respect of all consigned silver was 337,612.24 Fine Troy Ounces as of December 1, 2005. The Pay-Off Letter also provided for a Total Pay-Off Amount of $1,452,550.07. Furthermore, the Pay-Off Letter provided that if the Total Pay-Off Amount was received by the Bank by 10:00 a.m., New York time on December 1, 2005, "the Debtor's obligations under the above-described agreements shall be satisfied in full, with the exception of any terms of the Agreements that, by their express terms, survived payment or satisfaction of the Debtor's obligations."

12. Armbrust timely paid the Bank the Total Pay-Off Amount set forth in the Pay-Off Letter and transferred its accounts and precious metal consignments to Sovereign Bank. Upon information and belief, Sovereign Bank, in addition to Armbrust, relied upon the accuracy and reliability of the Pay-Off Letter in entering into the new financing arrangements, which included granting Sovereign Bank a security interest in Armbrust's precious metal inventory.

13. Upon Armbrust's payment of the Total Pay-Off Amount, the Bank thereupon filed Uniform Commercial Code Termination Statements with respect to all UCC Financing Statements filed by the Bank against Armbrust. New UCC Financing Statements were filed by Sovereign Bank.

14. In December, 2007, more than two years after Armbrust's payment of the Total Pay-Off Amount to the Bank, the Bank communicated to Armbrust that the Bank had discovered that it had made an error in calculating the Total Pay-Off Amount. According to the Bank, the Bank had failed to include an entry in its electronic records concerning a consignment transaction of 15,000 Fine Troy Ounces of silver which allegedly occurred on or about March 19, 2004 – over one and one-half years before the Total Pay-Off Amount was calculated.

15. On or about December 28, 2007, legal counsel for the Bank sent a demand letter to Armbrust demanding payment of 15,000 Fine Troy Ounces of silver or its dollar equivalent,

which totals approximately $219,600.00 based upon the spot market purchase price as of December 27, 2007. The demand also included interest and payment of legal costs and expenses. A true and accurate copy of the demand letter is attached hereto and marked as Exhibit E.

16. Due to the passage of time, it was and remains impossible for Armbrust to accurately reconstruct its precious metal inventory records going back more than four years. Moreover, Armbrust's financial records, including its audited financial statements and the annual audits and field examinations performed by Bourget & Associates, Inc., failed to disclose any discrepancy in the consignment inventory of the magnitude claimed by the Bank. To the contrary, any discrepancies which may have existed or which were known by Armbrust were minor and within industry norms. Any mistake regarding the Total Pay-Off Amount was a unilateral mistake on the part of the Bank.

17. On or about April 1, 2008, the Bank, via legal counsel, advised Armbrust that it intended to pursue legal and other equitable remedies unless Armbrust paid the amount the Bank claimed was due and owing.

18. Armbrust denies that it owes the Bank anything, denies that there is any mutual mistake by the parties that might render the release and accord and satisfaction contained in the Pay-Off Letter voidable, and asserts that, at most, the Bank's claim is predicated upon its own unilateral mistake. Armbrust, furthermore, asserts that equity should deny the Bank any ability to avoid the release and accord and satisfaction contained in the Pay-Off Letter due to the Bank's own negligent error. Armbrust is innocent of any wrongdoing and has materially changed its position in reliance upon the Total Pay-Off Amount provided by the Bank.

19. This is a case of actual controversy within the jurisdiction of the Court.

WHEREFORE, Armbrust demands judgment against the Bank, declaring the rights and other legal relations of the parties and, in particular, declaring that Armbrust has no obligation to the Bank and that the Bank has forfeited any claim in connection with the alleged March 19, 2004 silver transfer. Armbrust also demands such other and further relief as this Court deems meet and just, including an award of attorneys fees and costs.

ARMBRUST INTERNATIONAL, LTD.

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

Steven E. Snow (#1774)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
ses@psh.com

DATED: April 18, 2008

979663_1/3119-5