United States District Court
For the District of Rhode Island

| | | |
|---|---|---|
| Armbrust International, LTD.,<br>Plaintiff/Defendant-in-counterclaim<br><br>v.<br><br>ABN AMRO Bank, NV,<br>Defendant/Plaintiff-in-counterclaim<br>Third-party Plaintiff<br><br><br>v.<br><br>ERWIN PEARL,<br>Third-party Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 08-143-S |

**PRE-TRIAL CONFERENCE STATEMENT**
**OF DEFENDANT/PLAINTIFF-IN-COUNTERCLAIM AND THIRD PARTY PLAINTIFF**
**ABN AMRO, BANK, NV**

Defendant/Plaintiff-in-counterclaim and Third-party Plaintiff ABN AMRO Bank, NV ("ABN") submits the following Pre-Trial Conference Statement.

## I. Facts giving rise to the Complaint, Counterclaim, and Third-party Complaint.

ABN is a leading international provider of integrated credit facilities providing both dollar loans and precious metal consignment facilities to the jewelry industry. Plaintiff Armbrust International, Ltd. ("Armbrust") is in the business of manufacturing and distributing precious metal and fashion jewelry products. Third-party Defendant, Erwin Pearl ("Pearl") is the CEO of Armbrust. During June 2000, ABN and Armbrust became parties to a commercial loan transaction, which included, among other things, a consignment agreement ("the Consignment Agreement"), which governed the consignment of precious metals by ABN with Armbrust. Because of Armbrust's then-financial condition, ABN also required that the obligations of

Armbrust under the Consignment Agreement be guaranteed by Pearl ("the Guaranty").

At the time of the execution of the Consignment Agreement in 2000, Pearl's Guaranty was in the amount of $3.5 million. In 2002, the amount of the Guaranty was increased to $5 million. Although the amount of the Guaranty was amended in 2004 to the reduced amount of one million dollars, which reflected the improved financial performance of Armbrust, the Guaranty obtained in 2002 has never been released and remains in full force and effect.

Among other things, the Guaranty recited that, up to the agreed upon amount, it was unconditional, irrespective of the legality, validity or enforceability of the obligations under the Consignment Agreement. Further, Section 3(b)(v) of the Guaranty provides that ABN could:

> settle or compromise any or all of the obligations with the Borrower [Armbrust], and/or any other person or persons liable thereon and/or subordinate the payment of same or any part thereof to the payment of any other debts or claims which at any time may be due or owing to the Bank [ABN] and/or other person; all in such manner and upon such terms as Bank [ABN] may see fit and without notice to or consent from Guarantor [Pearl] who hereby agrees to be and remain bound upon this Guaranty irrespective of the effect upon the existence or status of the obligations or the collateral security and notwithstanding any such change, alternation, renewal, continuance, extension, acceleration, sale, exchange, release, compromise, surrender, application, subordination or any other action here and above mentioned.

Under the terms of the unconditional and continuing Guaranty, Pearl guaranteed the performance of all the obligations of Armbrust to ABN, of every kind and nature whatsoever, up to the aggregate amount of $1 million. Further, the terms of the Guaranty expressly waive notice of dishonor, notice of non-payment, demand and conditions enumerated therein.

In March 2004, Armbrust requested a silver transfer from ABN pursuant to the Consignment Agreement in the amount of 15,000 Fine Troy Ounces. Although this silver transfer was made by ABN to Armbrust, through a clerical error, the transfer was not booked

internally by ABN. As a result, the electronic records of the aggregate outstanding amount of silver on consignment owed by Armbrust neglected to capture the 15,000 Fine Troy Ounces in question and Armbrust also failed to discover that it had received 15,000 Fine Troy Ounces of silver without appropriately compensating ABN.

In late 2005, Armbrust sought and found alternative financing. Accordingly, ABN generated an "Estimated Total Payoff Amount", but, because of the inadvertent omission of the silver from ABN's electronic records and Armbrust's failure to realize that it had received the silver without properly compensating ABN for it, the Estimated Total Payoff Amount provided by ABN understated the silver on consignment with Armbrust and the amount due. The "Estimated Total Payoff Amount" was based upon the mistaken assumption by both ABN and Armbrust that the records of ABN included all the silver consigned to Armbrust by ABN.

In September of 2006, upon reconciliation of the silver account, ABN discovered the discrepancy. By letter dated September 22, 2006 and telephone conversation of that date, ABN informed Armbrust of the understatement. Since that time, despite repeated requests, Armbrust has failed and refused to satisfy its obligation under the Consignment Agreement to pay for the 15,000 ounces of silver. Additionally, Pearl is aware of the failure and refusal of Armbrust to pay for the silver and has urged Armbrust to resist its obligations to make payment to ABN. Neither Armbrust nor Pearl has paid the obligations owed to ABN for the silver.

Both ABN and Armbrust have brought claims for declaratory judgment. ABN's claim for declaratory judgment is based on mutual mistake or (alternative claim) if the erroneous "Estimated Total Payoff Amount" represented a unilateral mistake by ABN, such mistake cannot be enforced against it since to do so would be a windfall to Armbrust and be unconscionable. ABN also brought a claim for restitution against Armbrust based upon unjust enrichment. ABN

is requesting that the silver be returned or the dollar equivalent which totals approximately $244,650 based on ABN's spot market purchase price as of June 13, 2008[1], plus the consignment fee, interest, and the payment of all legal costs and expenses of ABN and any other relief that the Court deems proper.

Additionally, ABN has brought a third party claim against Pearl based on the Guaranty. There is now due and payable by Pearl to ABN by reason of the Guaranty the sum of at least $244,650, plus consignment fee, interest and costs (including attorneys fees) no part of which has been paid. ABN requests judgment against Pearl.

**II. Elements that must be proven in ABN's claims against Armbrust and Pearl.**

A. Mutual Mistake.

ABN seeks a declaratory judgment based on the grounds of mutual mistake. ABN's claims are governed by New York law according to the terms of the Consignment Agreement. Under New York law, "a contract is voidable under the equitable remedy of recission if the parties entered into the contract under a mutual mistake of fact which is substantial and existed at the time the contract was entered into." *Allen v. Westpoint-Pepperell, Inc.,* 933 F. Supp. 261, 268 (S.D.N.Y. 1996). In order to justify recission, the mutual mistake should be so substantial "that the agreement does not represent a true meeting of the parties' minds." *Carney v. Carozza,* 792 N.Y.S.2d 642,644 (N.Y. App. Div. 2005); *see also Ryan, Klimek, Ryan Partnership v. Royal Insurance Co. of America,* 728 F. Supp. 862, 870 (D.R.I. 1990)( applying New York law, the court stated that a "court must focus on the basic assumptions of the parties at the time of the settement agreement in order to evaluate whether the mistaken assumption goes to the heart of

[1]Such amount is to be redetermined based on changes in such spot market purchase price until paid.

the bargain"). Mutual mistake must be supported with clear and convincing proof. *See id.*

In the instant case, ABN will be able to show that the contract should be rescinded due to mutual mistake of both ABN and Armbrust. Both parties held a belief that was not in accord with the facts regarding the amount owed under the Consignment Agreement. The parties intended that Armbrust would pay the amount due under the terms of the Consignment Agreement, and not receive an approximate $250,000.00 windfall, which is a substantial discrepancy. As such, the contract did not reflect a "true meeting of the minds" and should be rescinded.

B. Unilateral Mistake.

"Where a (unilateral) mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake . . . and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake." *Koam Produce, Inc. v. DiMare Homestead, Inc.*, 329 F.3d 123, 127 (2nd Cir. 2003); *see also Cox v. Lehman Bros., Inc.*, 790 N.Y.S.2d 16, 17 (N.Y. App. Div. 2005); *Kraft Foods, Inc. v. All These Brand Names, Inc.*, 213 F.Supp.2d 326, 330 (S.D.N.Y. 2002) ("[I]f the party establishes a unilateral mistake as to a basic assumption of the contract, a court may void releases even in the absence of fraud."). A party bears the risk of mistake when "(1) the risk is allocated to him by agreement of the parties, or (2) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the the facts to which the mistake relates but treats his limited knowledge as sufficient, or (3) the risk is allocated to him by the court on the grounds that it is reasonable in the circumstances to do so." *Koam Produce, Inc.*, 329 F.3d at 127-128.

"A mistake is a 'belief not in accord with the facts'." *Id* at 127 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 151). Moreover, rescission on the basis of unilateral mistake may only be appropriate when the parties may be returned to the status quo without prejudice. *See Cox*, 790 N.Y.S. 2d at 17. Since recission is an equitable remedy, a court will generally weigh the facts and circumstances in exercising its discretion to grant rescission, which is a drastic and extraordinary remedy. *See Allen*, 933 F.Supp. at 268. Factors weighed may include the sophistication of the parties and whether the rescission would create an unintended windfall for one party or another. *See id.* at 268-9.

Here, the retention of the funds by Armbrust based on ABN's accounting error would be unconscionable and Armbrust is not prejudiced by rescinding the contract and returning Armbrust to the status quo, where Armbrust owed the full amount due under the Consignment Agreement.

C. Unjust Enrichment.

"To prevail on a claim of unjust enrichment, a plaintiff must establish that the defendant benefitted at the plaintiff's expense and that equity and good conscience require restitution." *Whitman Realty Group, Inc. v. Galano,* 41 A.D.3d 590, 591 (N.Y. App. Div. Ct. 2007). Therefore, in order for ABN to make out a prima facie case for unjust enrichment, ABN will have to show that Armbrust was enriched at ABN's expense and that to retain such enrichment would be against "equity and good conscience" *Id.; Swits v. New York Systems Exchange, Inc.,* 722 N.Y.S. 2d 300, 302 (N.Y. App. Div. 2001).

D. The Guaranty.

In *National Union Fire Ins. Co. v Williams,* 637 N.Y.S. 2d 36, 37-38 (N.Y. App. Div. 1996), the court explained that ordinarily, a guaranty, even if contemporaneously executed, is

considered a distinct obligation. "A guarantee is an agreement to pay a debt owed by another which creates a secondary liability and thus is collateral to the contractual obligation." *Brewster Transit Mix Corp. v. McLean*, 169 A.D.2d 1036, 1037 (quoting *Shire Realty Corp. v. Schorr*, 390 N.Y.S.2d 622, 625 (N.Y. App. Div. 1977). "The nature of the obligation depends upon the parties' intention, and where that intention 'may be gathered from the four corners of the instrument, interpretation of the contract is a question of law'." *Brewster Transit Mix Corp., supra*, at 317(quoting *General Phoenix Corp. v Cabot*, 89 N.E. 2d 238, 241 (N.Y. 1949). *See also Bank of Tokyo-Mitsubishi, Ltd. v. Kvaerner*, 671 N.Y.S.2d 905, 909(N.Y. App. Div.1998).

A fair interpretation of the obligation undertaken by Pearl in the present matter is that Pearl has guaranteed the performance of all the obligations of Armbrust to ABN, of every kind and nature whatsoever, up to the aggregate amount of $1 million. This liability under the Guaranty is unconditional irrespective of the legality, validity or enforceability of the Armbrust's obligations and any settlement or compromise of the obligations owed to ABN. The terms of the Guaranty expressly waive notice of dishonor, notice of non-payment, demand and conditions enumerated therein. The Guaranty remains in full force and effect and has never been terminated by Pearl. Thus, there is now due and payable by Pearl to ABN by reason of the Guaranty the sum of at least $244,650, plus consignment fee, interest and costs (including attorneys fees) no part of which has been paid.

ABN AMRO Bank, NV,

By its attorneys,

/s/Staci L. Kolb
Joseph V. Cavanagh, Jr. (#1139)
Staci L. Kolb (#5451)
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 (fax)

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 23rd day of July 2008, the foregoing Pre-Trial Conference Statement was filed with the Clerk of the United States District Court for the District of Rhode island and is available for viewing and downloading to the following registered counsel of record:

Steven E. Snow, Esq., Partridge, Snow & Hahn, LLP
**ses@psh.com**

/s/Staci L. Kolb